United States District Court
Southern District of Texas

**ENTERED**

June 26, 2026

Nathan Ochsner, Clerk

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | CRIMINAL NUMBER H-26-018 |
| | § | |
| EDUARDO AGUILERA-GALLARDO, | § | |
| | § | |
| Defendant. | § | |

## MEMORANDUM OPINION AND ORDER

On May 19, 2026, a jury found Eduardo Aguilera-Gallardo ("Defendant") guilty of one count of Illegal Re-entry, in violation of 8 U.S.C. §§ 1326(a) & (b).[1]  Pending before the court is Defendant's Motion for New Trial (Docket Entry No. 110).  For the reasons explained below, Defendant's Motion for New Trial will be denied.

## I.  Background

On March 19, 2026, Defendant was charged with one count of Illegal Re-entry, in violation of 8 U.S.C. §§ 1326(a) & (b).[2] Defendant entered a plea of not guilty.

---

[1]Verdict Form, Docket Entry No. 101, p. 1.  For purposes of identification all page numbers reference the pagination imprinted at the top of the page by the court's Electronic Case Filing system.

[2]Superseding Indictment, Docket Entry No. 66, p. 1.  Although the Government originally charged Defendant with one count of Illegal Re-entry, in violation of 8 U.S.C. § 1326(a), the superseding indictment added a violation of § 1326(b).

The case went to trial on May 18, 2026.[3]  At trial, Defendant argued that the Government could not prove that his presence in the United States was knowing, which is an essential element of Illegal Reentry in violation of 8 U.S.C. §§ 1326(a) & (b).[4]  Defendant also asserted the defense of duress, arguing that "[u]pon arrival at the border, he was kidnapped by the Northeast Cartel [], beaten up after attempting to escape, held for ransom, and forced to return to the United States."[5]  The case was submitted to the jury on May 19, 2026, which returned a guilty verdict.[6]

On June 2, 2026, Defendant filed a motion for a new trial.[7] The Government filed a response on June 9, 2026.[8]  Defendant did not file a reply.

## II.  **Analysis**

"Federal Rule of Criminal Procedure 33 permits the district court to 'vacate any judgment and grant a new trial if the interest of justice so requires.'"  United States v. Piazza, 647 F.3d 559, 565 (5th Cir. 2011) (quoting Fed. R. Crim. P. 33(a)).  "[T]he

---

[3]1st Day of Jury Trial, Docket Entry No. 93, p. 1.

[4]Defendant's Motion for New Trial, Docket Entry No. 110, pp. 1-2.

[5]Response to Government's Motion in Limine Precluding the Affirmative Defense of Duress, Docket Entry No. 40, p. 1; Defendant's Motion for New Trial, Docket Entry No. 110, pp. 1-2.

[6]Verdict Form, Docket Entry No. 101, p. 1.

[7]Defendant's Motion for New Trial, Docket Entry No. 110.

[8]United States' Response to Defendant's Motion for New Trial ("Government's Response"), Docket Entry No. 111.

interest of justice standard 'requires the district court to balance the alleged error against the record as a whole and evaluate the fairness of the trial.'" Id. (quoting United States v. McBride, 862 F.2d 1316, 1319 (8th Cir. 1988)).  The Fifth Circuit has held that a new trial should only be granted "upon demonstration of adverse effects on substantial rights of a defendant." Id.

Defendant argues that he is entitled to a new trial due to the cumulative effect of the following alleged evidentiary errors at trial: (1) the Government questioned Defendant about his father's text messages, which were inadmissible, unauthenticated hearsay under Federal Rules of Evidence 402, 403, 602, 802, and 901; (2) Defendant was wrongly prohibited from offering his father's sworn statement, which was admissible under Rule 804(b)(3)(B); and (3) the court wrongly allowed the Government to question Defendant about his criminal history, which was inadmissible under Rules 403, 404(b), and 609.[9]

## A.   The Father's Text Messages

At trial Defendant contended that after he was deported to Mexico he was kidnapped by the Northeast Cartel and forced to cross the border back into the United States.[10]  The Government's theory

---

[9]Defendant's Motion for New Trial, Docket Entry No. 110, pp. 3-4.

[10]Id. at 1-2.

was that Defendant's father paid someone to smuggle Defendant back into the United States from Mexico.[11]  To support that theory while cross examining Defendant the Government asked him about text messages between his father, Tomas Aguilera, and a person identified as Emily:

> Q.   Would you be surprised that the day after you were deported, one of your friends, Emy or Emily, reached out to [Tomas Aguilera] and said, "The thing we talked yesterday, I moved it and took care of it."  Would that surprise you?
>
> A.   Yes, sir.
>
> Q.   Given that was on March 26, 2025, that was the day after you were deported.
>
> A.   Yes, sir.
>
> Q.   Would it also surprise you that it was just the very next day, March 27th, 2025, that somebody else reached out to your father about payment information.
>
> . . .
>
> Q.   Would it surprise you that the day after your friend text[ed] your father that, that on March 27, 2025, that's the first time that your father starts getting text messages about payment information to get you back into the United States?
>
> A.   Yes, sir.
>
> Q.   Okay, And that takes a couple of days; is that correct?
>
> A.   Yes, sir.

---

[11]Transcript of Jury Trial - Day 2 ("Trial Transcript"), Docket Entry No. 108, p. 38 lines 6-11.

Q.    So that – those messages continue from the 27th, the 28th, and the 29th, until you're eventually brought back on the 31st?

A.    Yes, sir.

Q.    And that same number, Amy or Emily, your dad text back and says, "Eduardo is here.  He is with you."[12]

Defense counsel objected to the Government's questions about the text messages, arguing that they were beyond the scope of direct and that the text messages were not admitted into evidence and were hearsay.[13]  After initially allowing the Government to proceed with its questioning, the court sustained Defendant's second objection to the text messages, finding that the text messages were hearsay and that Defendant had no personal knowledge of them.[14]  The court instructed the jury to disregard the Government's questions and Defendant's answers about the text messages.[15]

Defendant argues that the Government's questions about his father's text messages violated Rule 901, which generally requires evidence to be authenticated before it is admitted.[16]  Barnes, 803

---

[12]Id. at 37 lines 14–24, p. 39 lines 2–14.

[13]Id. at 38 line 1 thru p. 39 line 17.

[14]Id. at 39 lines 16–17.

[15]Id. lines 19–22.

[16]Defendant's Motion for New Trial, Docket Entry No. 110, pp. 4-5.  Defendant relies on United States v. Barnes, 803 F.3d 209 (5th Cir. 2015), and United States v. Lewis, 157 F.4th 415 (5th Cir. 2025), to argue that the Government's questions about the text messages violated Rule 901.  However, both Barnes and Lewis discuss
(continued...)

F.3d at 217 (quoting Fed. R. Evid. 901(a)) ("Authentication is a condition precedent to the admission of evidence and is satisfied when a party presents sufficient evidence 'to support a finding that the item is what the proponent claims.'").  The Government relies on Rule 608(b) of the Federal Rules of Evidence, which "permit[s] inquiry on cross examination into specific instances of conduct which may bear on a witness' credibility in order to impeach the credibility of the witness."  United States v. Farias-Farias, 925 F.2d 805, 809 (5th Cir. 1991).  Rule 608(b) allows inquiry into bad acts on cross-examination, but does not permit extrinsic evidence of the bad acts to be admitted.[17]  Jordan v. ENSCO Offshore Company, CIVIL ACTION NO. 15-1226, 2016 WL 3049565, at *9 (E.D. La. May 23, 2016).  To be inquired into on cross examination the "alleged bad act must have a basis in fact," but that basis in fact does not have to "be proved as a fact before a good faith inquiry can be made."  United States v. Nixon, 777 F.2d 958, 970 (5th Cir. 1985); compare with Fed. R. Evid. 901(a) ("[T]he

---

[16](...continued)
evidence that was introduced as exhibits by the Government in its case in chief.  Barnes, 803 F.3d at 217; Lewis, 157 F.4th at 422–23, 434.  These cases are therefore not applicable.  Moreover, because the Government did not seek to introduce the text messages, and instead sought to use the text messages as impeachment evidence and because the text messages were not admitted by the court, Rule 901 is of no consequence as to whether Defendant was improperly questioned about his father's text messages.

[17]Evidence of the bad act is limited to the witness' testimony. Fed. R. Evid. 608(b).  Extrinsic evidence of the bad act may be admitted only if it is a criminal conviction that is admissible under Rule 609.  Id.

proponent must produce evidence sufficient to support a finding that the item is what the proponent claims it is."). Until the court ruled otherwise, the Government's use of the text messages was permitted by Rule 608(b).[18]

Defendant also argues that the court should have given a curative instruction directing the jury to disregard all questions and testimony regarding Tomas' text messages.[19] But after the court sustained Defendant's second objection to the text messages, the court gave the jury the following curative instruction:

THE COURT:     I don't know – the jury will understand
               that's just the Government's argument.
               There's not evidence to support that.
               The whole purpose of allowing it is to
               see if there's any evidence. So the jury
               will disregard what the Government's
               lawyer just said for the truth of the
               matter.

. . .

THE COURT:     Yeah, the objection is sustained. That's
               hearsay. He has no idea what the
               messages said.

. . .

MS. OBANDO:    Your Honor, we also want to move to
               strike that testimony.

---

[18]Government's Response, Docket Entry No. 111, p. 3 ("Defendant was impeached, consistent with F.R.E. 608(b), with specific instance of conduct related to the affirmative defense and course of events Defendant had just described to the jury on direct examination.").

[19]Defendant's Motion for New Trial, Docket Entry No. 110, p. 7.

THE COURT:    The jury will disregard the statement.[20] Despite Defendant's assertion that the court failed to give a curative instruction, it is clear from the record that the court instructed the jury to disregard the questions and testimony concerning the text messages.

**B.    The Proffer of the Statement of Defendant's Father**

Before trial the Government investigated Defendant's father, Tomas Aguilera, for conspiracy to commit alien smuggling.[21]  During its investigation of Tomas Aguilera the Government conducted a proffer session with him.[22]  During the proffer Tomas stated that he paid a ransom to kidnappers so that they would release his son into the United States.[23]  He also stated that he drove Defendant from San Antonio to Houston and provided him shelter until his arrest.[24]  HSI Agent Cortez Lott summarized the proffer in a Report of Investigation ("ROI").[25]

---

[20]Trial Transcript, Docket Entry No. 108, p. 38 lines 19-23, p. 39 lines 16-21.

[21]Defendant's Motion for New Trial, Docket Entry No. 110, pp. 6-7.

[22]Government's Response, Docket Entry No. 111, p. 7.

[23]Report of Investigation (ROI) - Interview and Phone Extraction ("ROI"), Exhibit 1 to Defendant's Motion for New Trial, Docket Entry No. 110-1, pp. 1-2.

[24]Id.

[25]Government's Response, Docket Entry No. 111, p. 7.

Although Defendant originally planned to called Tomas as a witness,[26] on the first day of trial Tomas' attorney informed Defendant and the Government that Tomas planned to invoke the Fifth Amendment if called by either party.[27]  Accordingly, on the second day of trial, to rebut the Government's line of questioning about Tomas' text messages, Defendant moved to admit the ROI, arguing that it was admissible as evidence under Rule 804(b)(3)(B).[28]  The court was unpersuaded by Defendant's arguments and held that the ROI was not admissible under Rule 804(b)(3)(B).[29]

Defendant argues that he was wrongly prohibited from introducing the ROI into evidence because it was admissible under Rule 804(b)(3)(B) and because it was necessary to Defendant's defense.[30]

1.    Rule 804(b)(3)(B)

Hearsay evidence is admissible under Rule 804(b)(3)(B) when the declarant is unavailable, the statement subjects the declarant to criminal liability such that a reasonable person would not have made the statement unless he believed it to be true, and the

---

[26]Witness List, Docket Entry No. 86, p. 1.

[27]Email from Tomas Aguilera's Attorney, Exhibit 3 to Defendant's Motion for New Trial, Docket Entry No. 110-3, p. 1.

[28]Defendant's Motion for New Trial, Docket Entry No. 110, p. 7.

[29]Id.

[30]Id.

statement is corroborated by circumstances clearly indicating trustworthiness. United States v. Bell, 367 F.3d 452, 466 (5th Cir. 2004).

The ROI is not admissible under Rule 804(b)(3)(B) because it contains hearsay within hearsay. The ROI is not a transcript of Tomas' statements during the proffer; it is Agent Lott's written summary of Tomas' account of Defendant's kidnapping.[31] "The recordation of [Tomas'] statement[s] by [Agent Lott] [is a] classic example of hearsay within hearsay." Rock v. Huffco Gas & Oil Co., Inc., 922 F.2d 272, 280 (5th Cir. 1991); see also Vanderbilt Mortgage and Finance, Inc. v. Flores, 789 F.Supp.2d 750, 762 (S.D. Tex. 2011) (finding that notes summarizing a telephone conversation constituted hearsay within hearsay), aff'd in part and rev'd in part on other grounds, 692 F.3d 358 (5th Cir. 2012).

For the ROI to be admissible both Tomas' statements and Agent Lott's statements must come within exceptions to the hearsay rule. Fed. R. Evid. 805 ("Hearsay within hearsay is not excluded by the rule against hearsay if each part of the combined statements conforms with an exception to the rule."). Although Defendant has the burden to show that Agent Lott's statements fall within an exception to hearsay, he made no such showing at trial or in his motion for a new trial. See Dempster v. Lamorak Insurance Co., 488 F.Supp.3d 499, 507 (E.D. La. 2020) ("After a party properly objects

---

[31]See generally, ROI, Exhibit 1 to Defendant's Motion for New Trial, Docket Entry No. 110-1.

to the admission of evidence as hearsay, the proponent of evidence bears the burden to show that the statement is not offered as hearsay or falls within an exception to the hearsay rule."). The court therefore did not err by declining to admit the ROI as evidence under Rule 804(b)(3)(B).

### 2. Inability to present a defense

"[T]he Constitution guarantees criminal defendants 'a meaningful opportunity to present a complete defense.'" Crane v. Kentucky, 106 S. Ct. 2142, 2146 (1986) (quoting California v. Trombetta, 104 S. Ct. 2528, 2532 (1984)). However, a defendant "does not have an unfettered right to offer testimony that is incompetent, privileged, or otherwise inadmissible under standard rules of evidence." United States v. Najera Jimenez, 593 F.3d 391, 402 (5th Cir. 2010). "The Supreme Court has suggested that the right to present a complete defense is rarely violated when a court excludes defense evidence under a rule of evidence." United States v. Reed, 908 F.3d 102, 113 n.33 (5th Cir. 2018).

Defendant argues that the court should have admitted the ROI because it was Defendant's only way to rebut the Government's allegations that Tomas paid to have Defendant smuggled back into the United States.[32] However, because the ROI is inadmissable hearsay, Defendant does not have an unfettered right to introduce it. Najera Jimenez, 593 F.3d at 402. To be admitted over hearsay

---

[32]Defendant's Motion for New Trial, Docket Entry No. 110, pp. 12-13.

-11-

concerns at trial, statements must have been made under "circumstances that provide[] considerable assurance of their reliability." Chambers v. Mississippi, 93 S. Ct. 1038, 1048 (1973). Although Defendant argues that the ROI does not pose any hearsay concerns,[33] the court concludes that the Tomas' statements were not made under "'circumstances that provide[] considerable assurance of their reliability'" because (1) Tomas gave his statement after the Government began investigating him for alien smuggling in violation of 8 U.S.C. § 1324 and (2) Tomas is Defendant's father, "which, if anything, raises questions as to the reliability" of his statements. McCullough v. Cain, 370 F.App'x 443, 448 (5th Cir. 2010) (quoting Chambers, 93 S. Ct. at 1048) (affirming the lower court's exclusion of hearsay statements despite defendant's argument that the exclusion deprived him of a meaningful opportunity to present a complete defense because the circumstances surrounding the statements did not provide a considerable assurance of reliability considering that (1) the declarants gave the statements "in an attempt to exculpate themselves" and (2) one of the declarants was the defendant's half brother, "which, if anything, raise[d] questions as to the reliability of [his] failure to mention" certain facts).

---

[33]Id. at 13. Defendant argues that the ROI does not present hearsay concerns because (1) the Government had ample opportunity to cross-examine Tomas, (2) the only reason Tomas was not testifying as a witness is because the Government chose to deny him testimonial immunity, and (3) the Government kicked open the door to Tomas' statement when it utilized his text messages. Id.

## C.    Defendant's Criminal History

On February 26, 2026, the Government filed a notice of intent to offer evidence of Defendant's prior bad acts under Rule 404(b), including an April 15, 2025, arrest for felony theft.[34]  At a May 14, 2026, hearing the court held that the Government was precluded from introducing evidence of Defendant's prior bad acts at trial.[35]

At trial Defendant testified that upon being forced back into the United States by the cartel, he was "[r]eally beat down and mentally abused."[36]  Specifically, Defendant testified that after he returned to the United States:

> I go to my parents' house and just really – I broke down. I went in just to my room, jumped in the bathtub and broke down and cried for a couple of days.  And just the ordeal that I had gone through.  And I have mental disabilities too.  The ordeal was horrible for me. . . . I been trying to work.  I go out and work with my dad. But some days I just didn't feel like it.  Like, through that mental anguish I stayed home.[37]

Before beginning its cross-examination of Defendant, the Government approached the bench to reurge its request to confront Defendant

---

[34]United States' Notice of its Intent to Introduce Certain Evidence Pursuant to Rules 404(b), 607, and 609 of the Federal Rules of Evidence, Docket Entry No. 29.  Defendant had four prior convictions.  Id. at 1-2.  Although the court allowed his conviction from his April 15, 2025, arrest to be admitted as Government's Exhibit 18, it did not allow his three older convictions to come in as evidence. Trial Transcript, Docket Entry No. 108, p. 29 line 10 thru p. 30 line 20.

[35]Hearing, Docket Entry No. 92, p. 1.

[36]Trial Transcript, Docket Entry No. 108, p. 27 lines 7-8.

[37]Id. at 26 lines 18-22, p. 27 lines 3-6.

with evidence of his prior bad acts.[38]  In a hearing outside the presence of the jury the Government explained to the court that Defendant's prior bad acts were relevant to rebut Defendant's testimony that he was simply confined to his father's home because of intimidation or emotional distress.[39]  The court agreed, but limited the Government's cross-examination to the felony theft Defendant committed during the time he was back in the United States before his arrest.[40]

Defendant argues that his prior conviction was not admissible because he did not open the door to admission of the conviction.[41] A defendant opens himself up to cross-examination "on the matters relevantly raised by . . . [direct] testimony." Brown v. United States, 78 S. Ct. 622, 628 (1958). "Statements elicited by defense counsel 'open[] the door' [to 404(b) evidence] if they convey an erroneous impression on the jury." United States v. Age, 136 F.4th 193, 222–23 (5th Cir. 2025).

Defendant opened himself up to cross-examination about his April 15, 2025, arrest and subsequent conviction for felony theft. Duress requires a defendant to be under an unlawful and present, imminent, and impending threat of such nature as to induce a well-

---

[38]Id. at 29 line 10 thru p. 30 line 20.

[39]Id.

[40]Id.

[41]Defendant's Motion for New Trial, Docket Entry No. 110, pp. 13–16.

grounded fear of death or serious bodily injury to himself.    To establish his duress defense, Defendant testified that during the two week period between his return to the United States and his arrest in this case he was under such mental anguish from his kidnapping that he simply worked for his dad or stayed home.[42] Defendant's direct testimony about his actions during that two week period opened him up to cross-examination about other activities he engaged in during that time, including his April 15, 2025, arrest and subsequent conviction for felony theft.

Defendant also argues that the court improperly admitted evidence of Defendant's bad acts because it failed to engage in a Beechum analysis.[43]  Before 404(b) evidence is admitted, courts must engage in a two-step test.  United States v. Beechum, 582 F.2d 898, 911 (5th Cir. 1978).   "First, it must be determined that the extrinsic offense evidence is relevant to an issue other than the defendant's character."   Id.   "Second, the evidence must possess probative value that is not substantially outweighed by its undue prejudice and must meet the other requirement of rule 403."   Id. "When requested by a party, a trial court must articulate on the record its finding as to the Beechum probative value/prejudice evaluation."   United States v. Anderson, 933 F.2d 1261, 1269 (5th

---

[42]Trial Transcript, Docket Entry No. 108, p. 26 line 18 thru p. 27 line 6.

[43]Defendant's Motion for New Trial, Docket Entry No. 110, pp. 16-18.

Cir. 1991).  "Even without a request, a court should identify the admissible purpose of the rule and 'explain why the evidence's probative value is not substantially outweighed by its undue prejudice' if admissibility of the extrinsic evidence is a <u>close question</u>."  <u>United States v. Kinchen</u>, 729 F.3d 466, 471 n.3 (5th Cir. 2013) (quoting <u>Anderson</u>, 933 F.2d at 1270) (emphasis added).

Although Defendant objected to the admissibility of the evidence under Rule 404(b), he did not ask the court to make findings under <u>Beechum</u>.  Moreover, when the court ruled that evidence of Defendant's April 15, 2025, arrest was admissible, it explained that the evidence was relevant to Defendant's defense of duress because it rebutted Defendant's testimony that "he was trying to get his act together and then turn himself in."[44]

Although Defendant argues that he was prejudiced by the admission of his conviction,[45] any possible prejudice Defendant suffered was mitigated by the court's instructions to the jury that "the defendant is not on trial for any act, conduct, or offense not alleged in the indictment."[46]  See <u>United States v. Ebron</u>, 683 F.3d 105, 132 (5th Cir. 2012) ("In the past, this court has indicated

---

[44]Trial Transcript, Docket Entry No. 108, p. 29 line 19 thru p. 30 line 17.

[45]Defendant's Motion for New Trial, Docket Entry No. 110, pp. 17-18.

[46]Jury Instructions, Docket Entry No. 98, p. 10.

that the prejudicial effect of Rule 404(b) testimony may be minimized by a proper jury instruction.").

### III.    Conclusion and Order

For the reasons explained above, the court concludes that Defendant has failed to demonstrate that his trial resulted in adverse effects on his substantial rights.    Accordingly, Defendant's Motion for New Trial (Docket Entry No. 110) is **DENIED**.

**SIGNED** at Houston, Texas, on this 26th day of June, 2026.

_____
SIM LAKE
SENIOR UNITED STATES DISTRICT JUDGE